## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

GERALD M. BISHOP and
DIANA BISHOP,

                Plaintiffs,

v.                                            CIVIL ACTION NO. 3:10-0468

OCWEN LOAN SERVICING, LLC, a corporation,
and BANK N.A., as trustees for Salomon Brothers
Mortgage Securities VII, Inc., Asset-Backed
Certificates Series 1998-NC3,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is Defendants' Motion to Dismiss. [Doc. 9]. All issues have been fully briefed, and are now ripe for resolution. For the reasons that follow, the motion is **GRANTED** in part and **DENIED** in part.

**I.      Background**

On February 25, 2010, Plaintiffs Gerald and Diana Bishop ("Plaintiffs") brought suit against Defendants Ocwen Loan Servicing, LLC ("Ocwen") and U.S. Bank, N.A. ("U.S. Bank") [collectively, "Defendants"] in the Circuit Court of Wayne County, West Virginia, alleging numerous violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, *et seq.* ("WVCCPA"), in connection with the servicing of Plaintiffs' home loan. Pl.'s Compl. 1, No. 1 (Ex. 1). Defendants timely removed the action to this Court on April 9, 2010 under 28 U.S.C. § 1441 on the basis of diversity jurisdiction. The material facts are as follows.

Plaintiffs obtained the deed to their current home in 1995 from Gerald Bishop's mother, Geraldine Bishop. Pl.'s Comp. 3, No. 1. Shortly thereafter, Plaintiffs secured a mortgage loan of $49,000 as part of the terms of the sales agreement that Gerald had reached with his mother. *Id.* at 3. The loan was subsequently refinanced by New Century Corporation for $83,000. *Id*. Pursuant to the terms of the refinancing, Plaintiffs executed a deed of trust and a note on the property. *Id*. Ocwen owns the servicing rights to Plaintiff's loan, Pl.'s Comp. 3, No. 1, and U.S. Bank is the current note holder.[1] *Id.*

Plaintiffs allege that they have timely made all required payments under the loan agreement. *Id.* at 4. Despite their compliance, however, Plaintiffs claim that Ocwen has routinely assessed and collected excessive monthly late fees since April of 2002. *Id.* In addition, Plaintiffs claim that on June 26, 2002, Ocwen began a pattern of force placing hazard insurance on their property, despite the fact that Plaintiffs already had an applicable insurance policy. *Id.* at 5.

In March of 2009, Plaintiffs received a notice from Ocwen stating that their loan was in default, and an offer to modify the loan repayment schedule. *Id.* at 6. After that letter was received, Plaintiffs allege that Ocwen sent numerous other letters emphasizing the loan's default status, and requesting all past due amounts including unauthorized late fees. *Id.* Plaintiffs further claim that, in late 2009, Ocwen began rejecting their regular monthly payments because of its position that the full balance of the loan should be accelerated due to Plaintiffs' alleged default. *Id.* at 7.

In February of 2010, after extended correspondence with Plaintiffs regarding the status of

---

[1] Ocwen, a Florida corporation, absorbed the mortgage servicing business of Ocwen Federal Bank FSB, after the latter voluntarily dissolved in 2005. Def. Notice of Removal 2, Doc. 1. U.S. Bank serves as Trustee for Salomon Brothers Mortgage Securities VII, Inc., Asset-Backed Certificate Series 1998-NC3. *Id.* at 1.

the loan, Ocwen notified Plaintiffs that it planned to commence foreclosure proceedings. *Id.* at 8. Plaintiffs allege that Ocwen notified them of the foreclosure proceedings and the proposed sale date on February 16, 2010. *Id.* Plaintiffs claim that, throughout the parties' communications, Ocwen contacted them directly despite actual knowledge that they were represented by counsel. *Id.*

In the instant action, Plaintiffs raise a number of claims charging Ocwen with engaging in unlawful loan servicing practices. Defendants filed a motion to dismiss the complaint on June 4, 2010, arguing that all of Plaintiffs' claims are preempted by the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461, *et. seq.* ("HOLA").

**II.    Discussion**

Defendants seek to dismiss Plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on a motion to dismiss, the factual allegations in the complaint must be taken in the light most favorable to the plaintiff, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."). However, the complaint must consist of more than mere "labels and conclusions," and contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Plaintiffs' Complaint raises multiple state law claims including Count I: Breach of Good Faith and Fair Dealing; Count II: Unauthorized Charges; Count III: Unlawful Debt Collection (in violation of W. Va. Code § 46A-3-112); Count IV: Unlawful Debt Collection (in violation of W.

Va. Code § 46A-2-127(d)); Count V: Unlawful Debt Collection (in violation of W. Va. Code § 46A-2-128(e)); Count VI: Illegal Rejection of Payments; Count VII: Illegal Force Placement of Insurance; Count VIII: Equity Abhors a Forfeiture. Finally, Count IX seeks to establish that Defendants Ocwen and U.S. Bank should be held jointly liable for the alleged misconduct. Defendants argue that each count in Plaintiffs' Complaint is preempted by HOLA.

### A. HOLA Preemption

HOLA created an exclusive regulatory scheme for federal savings and loan associations. *See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 641-42 (7th Cir. 2007) (Posner, J.). The statute authorizes the Office of Thrift Supervision ("OTS") to create and independently regulate federal savings institutions. *Id.* "Under this authority, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2 which is entitled to "'no less pre-emptive effect than federal statutes.'" *Coffman v. Bank of Am., N.A.*, No. 2:09-00587, 2010 U.S. Dist. LEXIS 78882, at *7-8 (S.D. W. Va. Aug. 4, 2010) (citing *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)). Section 560.2(a) provides in relevant part that "OTS . . . occupies the entire field of lending regulation for federal savings associations . . . [and] federal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities . . . ." 12 C.F.R. § 560.2(a).

Section 560.2(b) details a series of examples of states laws that are preempted under HOLA. *See* 12 C.F.R. § 560.2(b).[2] The OTS regulations do not, however, preempt state laws that have only

---

[2] Section 560.2(b) states that the types of state laws preempted by paragraph (a) are those purporting to impose requirements regarding:

(1) Licensing, registration, filings, or reports by creditors;

an incidental effect on the lending operations of federal savings and loan associations. For instance, "OTS has explained that the preemption provision in section 560.2(a) is not intended 'to preempt basic state laws such as state uniform commercial codes and state laws governing real property,

---

(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;

(3) Loan-to-value ratios;

(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

(6) Escrow accounts, impound accounts, and similar accounts;

(7) Security property, including leaseholds;

(8) Access to and use of credit reports;

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

(11) Disbursements and repayments;

(12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f-7a and part 590 of this chapter and 12 U.S.C. 1463(g) and § 560.110 of this part; and

(13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j-3 and part 591 of this chapter.

12 C.F.R. § 560.2(b).

contracts, torts, and crimes." *Jones v. Home Loan Inv., F.S.B.*, No. 2:09-0537, 2010 U.S. Dist. LEXIS 26953, at *10-11 (S.D. W. Va. Mar. 22, 2010) ("Jones") (citing OTS, *Lending and Investment*, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996)); *see also* 12 C.F.R. § 560.2(c) (specifically exempting various types of state laws from HOLA preemption). Section 560.2(c) specifies that the following types of laws are generally not preempted:

> (1) Contract and commercial law;
>
> (2) Real property law;
>
> (3) Homestead laws specified in 12 U.S.C. 1462a(f);
>
> (4) Tort law;
>
> (5) Criminal law; and
>
> (6) Any other law that OTS, upon review, finds:
>
>> (I) Furthers a vital state interest; and
>>
>> (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c). However, OTS makes clear that paragraph (c) is meant to "preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." OTS, *Lending and Investment*, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996). In that respect, courts are to approach preemption questions under § 560.2 in the following manner:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly.

*Id.* Under the "as applied" approach adopted in this district, if the plaintiff's claims are not preempted at step one, then the court must determine whether the "claims clearly fit within the confines of permissible state law claims laid out in section 560.2(c)." *Jones*, 2010 U.S. Dist. LEXIS 26953, at *11-12. In order to fall within those confines, the state law must have only an incidental effect on lending operations. *See id.* (adopting the foregoing "as applied" analysis under § 560.2(c) as stated in *Casey v. F.D.I.C.*, 583 F.3d 586, 593 (8th Cir. 2009) and *Silvas v. E*TRADE Mortgage Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008)).

### B. Individual Counts

Defendants ask this Court to dismiss Counts I-IX of Plaintiffs' Complaint arguing that all of the claims stated under those counts are preempted by HOLA. In engaging in the preemption analysis under § 560.2, the court must look beyond the mere title and form of the claims presented. *See Padgett v. OneWest Bank, FSB*, No. 3:10-08, 2010 U.S. Dist. LEXIS 38293, at *22-24 (N.D. W. Va. April 19, 2010). That is, the analysis necessitates an independent fact-intensive inquiry into the substance of each claim raised, *see id.* at 22-23 ("[T]he result depends on the particular nature of the claims as alleged by the plaintiff."), in order to ascertain whether the source of the plaintiff's allegations merely implicates state laws exempted from preemption, or laws precisely covered under § 560.2. *Id.* Ultimately, however, it must be remembered that "[a]ny doubt[s] should be resolved in favor of preemption." OTS, *Lending and Investment*, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996). With that in mind, the Court addresses the arguments as to each count.

#### 1. Duty of Good Faith

In Count I, Plaintiffs contend that Ocwen violated its common law duty of good faith and fair dealing by unlawfully assessing late fees, misrepresenting amounts due, conditioning Plaintiffs'

right to reinstate on payment of false amounts, force placing insurance on Plaintiffs' home, charging excessive fees in violation of law and the loan agreement, inexcusably rejecting Plaintiffs' good faith payments, and generally servicing their loan in bad faith. Pl.'s Compl. 9, Doc. 1. Defendants argue that each of these alleged acts represents a form of activity the regulation of which is specifically designated to OTS. Thus, Defendants urge this Court to find that Count I is preempted under 12 C.F.R. §§ 560.2(b)(4), (5), (10) and (11).

Under West Virginia law, there is a "covenant of good faith and fair dealing" implied in every contract. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 409 (4th Cir. 2002) (citing *Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270, 274 (W. Va. 1978)). Here, Plaintiffs argue that their allegations under Count I are not so much an attempt to impose external requirements on Ocwen's general lending practices, but rather an effort to vindicate their rights under the loan contract. In support of this argument, Plaintiffs point to *Nava v. VirtualBank*, No. 2:08-00069-FCD-KJM, 2008 U.S. Dist. LEXIS 72819 (E.D. Cal. July 16, 2008) ("Nava").

The court in *Nava* addressed a similar question of whether a plaintiff's state law claims for breach of contract and breach of the implied covenant of good faith were preempted by HOLA. *Id.* at *25. The court declined to find claims on the loan contract preempted because "lending practices will not be affected whatsoever by these claims." *Id.* at *26 (noting that claims alleging breach of contract and breach of the implied covenant of good faith and fair dealing under a loan contract are not covered by categories in § 560.2(b), and do not more than incidentally affect lending practices under § 560.2(c)). Defendants, however, reject the characterization of Count I as a simple common law contract claim. Instead, they argue that the acts alleged under Count I demonstrate a masked attempt to effectively regulate their lending policies and practices.

-8-

As a threshold matter, there is good authority supporting Plaintiffs' proposition that the OTS's regulatory authority does not eviscerate the rights of consumers to seek "basic state common-law-type remedies" like damages for breach of a loan contract. *See, e.g.*, *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d at 643 (providing a plain vanilla breach of contract hypothetical as an example of the type of claim likely not preempted by HOLA). As to Count I, however, Plaintiffs put the Court in a precarious situation, for while it is true that conventional breach of contract claims are exempted from preemption under § 560.2(c), part of the misconduct Plaintiffs have alleged seems to fit within the specific categories identified in § 560.2(b). After all, "preemption ultimately depends on the particular nature of the claims *as alleged* by the plaintiff." *Coffman*, 2010 U.S. Dist. LEXIS 78882, at *25 (emphasis added).

In this case, Plaintiffs assert, among other allegations, that Ocwen routinely assessed late fees and instituted excessive charges unlawfully under its official policies. Pl.'s Compl. 9, Doc. 1. Under step one of the preemption analysis, attacking the "lawfulness" of Ocwen's policy of assessing late fees and maintenance charges–as opposed to attacking its duties under an applicable loan contract–is an attempt to impose requirements on "[l]oan-related fees . . . [and] late charges," 12 C.F.R. § 560.2(b)(5), as well as on the "servicing . . . of . . . mortgages." *Id.* § 560.2(b)(10). Indeed, while Plaintiffs appear to veil the attempt to attack the general legality of Ocwen's lending practices, their veil is transparent. On page two of the Complaint, for example, Plaintiffs provide a detailed report of Ocwen's allegedly illegal and "unjust" loan practices outside of *any* allegation specific to the loan agreement in the instant case.

However, Plaintiffs are correct that requiring a bank to perform the obligations of its contract in good faith implicates none of the concerns embodied in HOLA. To be sure, then, Plaintiffs do

raise allegations under Count I that some of the aforementioned misconduct was in violation of the loan agreement. Thus, Count I **MAY PROCEED** only as to the claims charging Defendants with breaching the loan agreement, not those attacking their underlying loan servicing policies and practices. The Court does not believe that claims in Count I under the loan agreement are covered under any of the relevant categories in § 560.2(b). Rather, the claims fall within the confines of permissible state laws regulating contracts in § 560.2(c). And while the claims may have an effect on Ocwen's lending practices, such effect is only incidental.

### 2. Claims Under WVCCPA

In Counts II-VII, Plaintiffs allege a flurry of violations of the WVCCPA, W. Va. Code § 46A-1-101, *et seq.* Each count and its accompanying allegations are addressed below.

#### a. Unauthorized Charges

Count II of the Complaint contains allegations that Ocwen routinely assessed unauthorized charges and late fees in violation of W. Va. Code §§ 46A-2-127(g), -128(c), and -124(f). Pl.'s Compl. 10, Doc. 1. Count III charges that Ocwen instituted excessive late charges in violation of W. Va. Code § 46A-3-112. Finally, in Count IV, Plaintiffs claim that Defendants made false representations regarding the character, extent, or amount of a claim against Plaintiffs in violation of W. Va. Code § 46A-2-127(d).

As it relates to the noted counts, § 46A-2-127 provides in pertinent part that "[n]o debt collector shall use any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. . . ." W. Va. Code § 46A-2-127. That section specifies that the following conduct runs afoul of the foregoing requirement:

> (d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding;

> . . .
>
> (g) Any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, services fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation;
>
> . . .

*Id.* §§ 46A-2-127(d), (g). Section 46A-2-128(c) provides that the act of collecting, or attempting to collect, debt from a consumer may not be done in a manner in which a debt collector utilizes means that are unfair or unconscionable. W. Va. Code §46A-2-128(c) (noting that the collection of various types of service fees and charges constitutes unconscionable means to collect debt). As phrased, only parts of these claims appear to be preempted by HOLA.

First, as to Counts II and IV, sections 46A-2-127(d) and (g), -128(c), and -124(f) all prescribe means for state regulation of loan-related charges if the action is brought directly under the applicable statutory provision. Under 12 C.F.R. § 560.2(b)(5), state laws that directly regulate loan-related charges are preempted. In their response to Defendants' Motion to Dismiss, Plaintiffs attempt to recharacterize the nature of their claims under Counts II-IV, arguing that the "allegation . . . is [only] that Defendants charged fees that were not authorized by the parties' contract." Pl.'s Resp. 5, No. 16. The Complaint, however, compels a different conclusion. There, Plaintiffs frame their allegations *both* as matters of contractual breach and as independent violations of the WVCCPA. Plaintiffs nonetheless argue that this Court should apply the reasoning adopted by the court in *Padgett*, and allow their claims under the WVCCPA to proceed. U.S. Dist. LEXIS 38293, at *32-35. Among many other issues, the court in *Padgett* addressed the question of whether applicable sections of the WVCCPA concerning loan charges and late fees were preempted by HOLA. *Id.* The court concluded that the sections at issue were not preempted because, although they concerned the regulation of late fees of the type typically covered by 12 C.F.R. § 560.2(b)(5),

they did not invoke preemption concerns in that case. *Id.* at 32-34. This was because the plaintiff there did not so much attempt to impair, modify, or otherwise affect the application or validity of the terms regarding late fees, but rather argued that the defendant wrongfully imposed late fees in violation of the underlying loan agreement. *Id.* at 33. In essence, the court characterized the plaintiff's request for relief under the WVCCPA as an attempt to obtain a *remedy* for breach of contract, rather than an attempt to utilize a WVCCPA-conferred right regulating activity designated to OTS under HOLA.

Defendants respond to this argument by contending that what Plaintiffs really challenge here is the imposition of late fees as a matter of policy under the state statutory provisions, not the Defendants' actions under the loan agreement. *See Haehl v. Wash. Mut. Bank, F.A.*, 277 F. Supp. 2d 933, 940 (S.D. Ind. 2003) ("Section 560.2 expressly preempts state laws purporting to regulate loan-related fees and the processing and servicing of mortgages."). The Court finds that parts of Counts II and IV can be read as claims asserted under the loan contract, and thus do not implicate laws that fall within the preempted categories. The characterization of sections 46A-2-127(g) and 46A-2-127(d) as a remedy for breach of contract does not invoke the preemption concerns of § 560.2(a). This is because those sections essentially prohibit false misrepresentations used as a means to collect debt in violation of an underlying agreement. *See* W. Va. Code §§ 46A-2-127(d), (g) (prohibiting false and misleading representations). The remedy applied runs through § 46A-5-101(1) ("If a creditor has violated the provisions of this chapter . . . the consumer has a cause of action to recover actual damages . . . .").

On the contrary, however, using the WVCCPA to independently attack the imposition of late fees as a matter of policy is an attempt to apply the applicable provisions in a manner which directly

regulates conduct that is "sanctioned by federal law." *See Owens v. Cent. Mortg. Co.*, No. 08-114, 2008 U.S. Dist. LEXIS 112806, at *18-19 (N.D. W. Va. Dec. 22, 2008) ("Owens") (noting that the court should inquire extensively into the heart of a plaintiff's claims to ascertain whether the requested right and remedy represents a state attempt to regulate activity exclusively within the domain of HOLA). The plaintiff in *Padgett* did not directly challenge the imposition of late fees under the WVCCPA. 2010 U.S. Dist. LEXIS 38293, at *32-35. Rather, the court there recognized that the plaintiff readily admitted that the underlying loan agreement and its late fee provisions controlled, but argued only that the defendant had breached the agreement. *Id.* at 33. Thus, as the Complaint is now framed, Counts II and IV **MAY PROCEED** as to claims brought under W. Va. Code §§ 46A-2-127(d) and (g) to the extent that Plaintiffs seek independent remedies under West Virginia law for the alleged breach of contract. These claims do not implicate 12 C.F.R. § 560.2(b)(5) at step one. At step two, the Court finds that they fall within the confines of state law exempted from preemption under § 560.2(c), and do not have more than an incidental effect on general lending operations. Claims in the instant matter which are brought outside of the realm of the loan agreement, however, are preempted.

Alternatively, Plaintiffs' claims in Count II under § 46A-2-128(c) (unconscionable debt collection) and 124(f) (improper threats or coercion) are **DISMISSED WITH PREJUDICE** because they cannot be read to apply under the loan contract. This is because those claims represent independent attempts to regulate the propriety of Defendants' late fee policies and practices. Thus, they are preempted at step one of the preemption analysis. *See* 12 C.F.R. § 560.2(b)(5).

Finally, Count III charges Defendants with routinely assessing late fees in violation of § 46A-3-112. Section 46A-3-112 mandates direct methods for computing and collecting delinquency

-13-

charges on a consumer credit sale or loan. W. Va. Code § 46A-3-112. Under step one of the preemption analysis, this represents an attempt to regulate "[l]oan-related fees, including . . . initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees." *See* 12 C.F.R. § 560.2(b)(5). Accordingly, the claim is preempted, and Count III is **DISMISSED WITH PREJUDICE**.

### b. Unlawful Debt Collection

In Count V, Plaintiffs allege that Defendants violated W. Va. Code § 46A-2-128(e) by directly contacting them in order to collect past due amounts on their loan despite actual knowledge that they had retained counsel. Section 46A-2-128(e) prohibits debt collectors from directly communicating with a consumer when it is apparent that the consumer is represented by counsel. *See* W. Va. Code § 46A-2-128(e). Plaintiffs and Defendants agree that Count V is preempted. The court in *Padgett* held as much. *See* 2010 U.S. Dist. LEXIS 38293, at *25-27 (finding that the burden of training bank employees to comply with restrictions on contact with consumers more than incidentally affects lending, and claims under § 46A-2-128(e) are thus preempted). Accordingly, Count V is **DISMISSED WITH PREJUDICE**.

In Count VI, Plaintiffs claim that Defendants refused to credit payments to their account, and demanded money that was not due under the loan agreement in violation of W. Va. Code §§ 46A-2-127(d) and 46A-2-115. Pl.'s Compl. 12, No. 1. Section 46A-2-115 prescribes guidelines for setting default charges in consumer loans. W. Va. Code § 46A-2-115. Such a requirement as applied on these facts is a blatant attempt to regulate loan-related fees governed by 12 C.F.R. § 560.2(b)(5). Similarly, Plaintiffs' allegation that Ocwen illegally rejected their payments in an unconscionable and unfair manner in violation of § 46A-2-127(d) implicates HOLA preemption concerns under 12

C.F.R. § 560.2(b)(5). Going to the heart of Count VI, *see Owens*, 2008 U.S. Dist. LEXIS 112806, at *14 (noting that courts must look "'beyond the shell of how a plaintiff styles a claim to get to the nut of exactly what defendant conduct the plaintiff alleges caused her harm.'" (quoting *Watkins v. Wells Fargo Home Mortg.*, 631 F. Supp. 2d 766 (S.D. W. Va. 2008))), some of Plaintiffs' claims in Count VI are an attempt to invoke West Virginia law as a means to regulate the amount and nature of late charges that may be collected by a regulated lender. Specifically, Plaintiffs' claims under W. Va. Code §§ 46A-2-115 and -127(d) should be **DISMISSED WITH PREJUDICE** insofar as they challenge Defendants' internal credit payment methods and policies. However, similar to the analysis with respect to Count II, Plaintiffs' claims under W. Va. Code § 46A-2-127(d) for illegal rejection of payments **MAY PROCEED** to the extent that Plaintiffs allege that such rejections were in breach of the underlying loan agreement.

### c. Illegal Force Placement of Insurance

Count VII sets forth allegations that Defendants unlawfully force-placed insurance on Plaintiffs on June 26, 2002 and on April 24, 2003 in violation of W. Va. Code §§ 46A-2-127(d), -127(g) and -128(d), when Plaintiffs had already procured private insurance. As Plaintiffs point out, the OTS has reasoned that state statutory prohibitions on the forced placement of insurance are generally preempted by federal law. *See, e.g.*, *Cedeno v. IndyMac Bancorp, Inc.*, No. 06-6438, 2008 U.S. Dist. LEXIS 65337, at *23-24 (S.D.N.Y. Aug. 25, 2008) (citing OTS Letter P-99-3 (Mar. 10, 1999)); *Flagg v. Yonkers S & L Ass'n*, 307 F. Supp. 2d 565, 576 (S.D.N.Y. 2004) ("OTS has continued to endorse a construction that gives broad preemptive effect to the HOLA Regulations." (citing an OTS opinion letter relying on 12 C.F.R. § 560.2 in giving examples of conduct, including forced placement of hazard insurance, that is within the scope of HOLA regulation)). Accordingly,

Count VII–insofar as it attempts to apply the WVCCPA in manner which regulates the forced placement of insurance–is **DISMISSED WITH PREJUDICE**.

### 3. Residual Counts

Plaintiffs assert in Count VIII that Ocwen and U.S. Bank seek an unlawful forfeiture of the equity in their home based on claims for loan payments that were not yet due. Pl.'s Compl. 13, No. 1. They claim that this procedure is a violation of the rule that permits the pursuit of forfeiture only as a last resort. *Id.* Plaintiffs have provided little authority for this "basic principle of law." Moreover, Plaintiffs have not responded to Defendants' arguments as to Count VIII in the Motion to Dismiss. In that vein, Count VIII is **DISMISSED WITHOUT PREJUDICE** to give Plaintiffs a final chance to provide a clearer legal argument.

Finally, because the Court has not dismissed all counts of the Complaint, Count IX–which alleges that the Defendants acted in concert, and are thus jointly liable–**MAY PROCEED**. The Court finds that Plaintiffs have provided enough detailed factual allegations to withstand a motion to dismiss as to Count IX.

## III. Conclusion

In summary, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part in accordance with the foregoing Opinion. Plaintiffs' claims may proceed only as ordered.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: October 19, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE